Filed 1/21/14  In re Amanda M. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re AMANDA M. et al., Persons Coming Under the Juvenile Court Law. | B246246<br>(Los Angeles County<br>Super. Ct. No. CK89927) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>P.M.,<br><br>        Defendant and Appellant. | |

        APPEAL from orders of the Superior Court of Los Angeles County, Rudolph Diaz, Juvenile Court Referee.  Affirmed.

        Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

        John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Joann H. (Mother) and P.M. (appellant) are the parents of Amanda M. (born 1996) and C.M. (born 1998). Mother has two other children with a different father, Jason G., who are not parties to these proceedings. Appellant appeals from orders of the juvenile court denying his Welfare and Institutions Code[1] section 388 petition contending he was not given adequate notice of the dependency proceedings.

*FACTUAL & PROCEDURAL BACKGROUND*

This family was the subject of a prior appeal, case No. B240480, brought by Mother and Jason G., the father of her two other children (J.G.-1 and J.G.-2). In that opinion, filed March 11, 2013, we set forth the tragic circumstances of this family. Mother and her five children were living with Jason G. in July 2011 when one of the children (Jalyn, then 3 years old) died from a cerebral palsy seizure. Mother and Jason G. had left Amanda and C.M. at home alone to watch Jalyn the evening before she died. Amanda and C.M. had severe pre-existing emotional problems which were exacerbated by the death of Jalyn. Amanda and C.M. cut themselves, and alleged that Mother and Jason G. severely physically and emotionally abused all the children and engaged in domestic violence against each other.

In November 2011, when the Department of Children and Family Services (the Department) filed a dependency petition pursuant to section 300, subdivisions (a), (b), (c), and (j), Mother identified appellant as the father of Amanda and C.M. and provided the Department his full name and birth date. She said she had not seen him for 10 years. On the petition, appellant was listed as "whereabouts unknown."

After a due diligence search was completed, the Department located appellant in March 2012. He had been incarcerated from 2000 until 2011 for false imprisonment and taking a vehicle without permission, and was on parole until March 2013. He did not have a permanent address but the Department investigator was able to reach him by telephone and on two occasions told him about the adjudication hearing of March 22,

---

[1]     All subsequent undesignated statutory references shall be to the Welfare and Institutions Code.

2

2012.  Appellant admitted to the social worker he had used drugs in the past, had been a gang member, had verbally and emotionally abused Mother, was suicidal, and had been diagnosed as bi-polar, depressed, and schizophrenic.  He said he currently was staying in Los Angeles but had no permanent residence.

At the March 22, 2012 hearing, the juvenile court removed all four children from Mother and Jason G.'s custody.  Amanda and C.M. were placed in foster care.  The court found notice was given to all appropriate parties.  Appellant did not appear at the hearing.  He was ordered to participate in parenting classes and family counseling and awarded monitored visitation.

In June 2012, the social worker reported that after a due diligence search, appellant was found residing in a sober living home in Los Angeles.  Appellant had apparently been enrolled in the program since April 2012.  Appellant told the Department that he would like to participate in counseling and visits as soon as he received day passes from the program.  However, in July 2012, the social worker attempted to contact appellant by telephone, and twice received a "fax tone."  She stated she then gave notice of the hearing via telephone and fax on July 6, 2012.  The Department sent appellant a written notice of the September 6, 2012 hearing to an address on South Grand Avenue in Los Angeles.

In July 2012 Amanda and C.M. alleged they were sexually abused by Jason G.

On September 6, 2012, appellant appeared in dependency court for the first time and was appointed counsel.  The matter had been set for a section 342 hearing.  Appointed counsel indicated that she was making a "special appearance" for appellant so she could check the file with respect to notice.  The court confirmed with appellant the South Grand address was accurate.  The court then advised him that he was obligated to keep the social worker and attorney advised regarding his address and telephone numbers and that the court could make decisions regarding his parental rights, including termination of parental rights.  Appellant stated he understood.  The matter was continued until September 21, 2012 for trial.

3

On September 20, 2012, appellant filed a section 388 petition requesting the dependency court to vacate all prior adjudication and dispositional orders because he had not been properly noticed.

At the trial date on September 21, 2012, appellant's counsel and appellant appeared, and his counsel again stated she was "specially appearing." Appellant's counsel then informed the court that he was having trouble setting up visitation, and the court indicated it would order the Department to set up a visitation schedule.

The section 388 petition was heard on October 5, 2012, and the court denied it. At the time, appellant had been in telephone contact with but had still not visited Amanda and C.M. because they were not ready.

CONTENTIONS ON APPEAL

Appellant contends the Department did not properly notice him until eight months after the dependency proceedings commenced, violating his due process rights and prejudicially affecting his reunification with his daughters. He also contends that the failure to notify him resulted in a jurisdictional defect in the judgment of the juvenile court, and requests to vacate all orders issued after the detention hearing.

DISCUSSION

*1. Notice*

The court is required, at its earliest opportunity, to inquire of the identity of any alleged father and provide notice to that man that he is or could be the father of a child who is the subject of proceedings under section 300 and that the proceedings could result in termination of parental rights and adoption of the child. (§ 316.2, subds. (a), (b).) Even if his paternity has not yet been established, he is entitled to notice of the proceedings. (§ 316.2, subd. (b); *In re Joseph G.* (2000) 83 Cal.App.4th 712, 715.)

Section 291, subdivision (e) provides that if a child is detained, notice to parents not present at the initial petition hearing should be by personal service or by first-class mail. "At each hearing under section 300 et seq., the court must determine whether notice has been given as required by law and must make an appropriate finding noted in the minutes." (Cal. Rules of Court, rule 5.534(k).) The notice must give an alleged

4

father an opportunity to appear and assert a position. It must afford him a reasonable time to make his appearance so that he may establish himself as a presumed or biological father and seek services. (*In re Joseph G., supra,* 83 Cal.App.4th at p. 715; *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1351.)

Clearly, the statutory requirements were not met in this case since appellant did not receive written notice of the March 22, 2012 hearing. Despite this statutory violation, however, we cannot conclude that appellant's due process rights were violated.

"[T]here is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings. [Citations.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188.)

The Department is required to act "with diligence" to locate a missing parent. (*In re Justice P., supra,* 123 Cal.App.4th at p. 188.) "Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. [Citation.]" (*Ibid.*)

"Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object. [Citation.]" (*In re Justice P., supra*, 123 Cal.App.4th at p. 188.) If the Department employs a method of notice which is reasonably aimed to actually inform the parent, it is sufficient. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.)

Here, the Department had little information upon which to proceed. When the children were detained, Mother only provided appellant's name and birthday and his whereabouts were unknown. Appellant was released from custody sometime in 2011 (the record does not disclose when), presumably before the petition was filed. Once the Department located him, the adjudication hearing had not yet taken place. The social worker did a search and located him in March 2012. Once they located him, she talked to him over the telephone and told him about the March 22nd hearing. Appellant admits he had no permanent residence in March 2012. In this situation, oral notice was clearly reasonable and the best way to make sure he actually received the information.

5

Appellant then moved in April to a sober living house and apparently did not inform the Department. Nevertheless, the social worker located him again in July 2012 and after unsuccessfully attempting to reach him by telephone, she sent him written notice of the September 6, 2012 hearing. Appellant later confirmed that the address she used was accurate.

We conclude the Department acted with diligence to locate him, particularly since they had very little information to work with and because he was transient. The notice by telephone in March was the best way of ensuring that he received the information about the hearing.

Even if telephonic notice did constitute a due process violation, reversal of the orders is not required. In dependency proceedings, due process violations are subject to the harmless beyond a reasonable doubt standard. (*In re J.H., supra*, 158 Cal.App.4th at p. 183*; In re Justice P., supra,* 123 Cal.App.4th at p. 193.)

Despite being told of the March 22, 2012 adjudication hearing appellant did not appear. He does not argue that he would have appeared if he had been given written notice. Furthermore, there was nothing which appellant could have argued at the hearing which would have caused a different result. The court's assertion of jurisdiction over and removal of the children from Mother and Jason G.'s custody was clearly warranted. At that point in time, appellant could not have been awarded custody with no permanent residence and his recent release from prison. And even in absentia, appellant was awarded reunification services.

As far as the September 6 hearing held pursuant to section 342, the social worker sent notice by fax, and a written notice to appellant's last known address, which appellant later confirmed as accurate.

"It is not always possible to litigate a dependency case with all parties present. The law recognizes this and requires only reasonable efforts to search for and notice missing parents. Where reasonable efforts have been made, a dependency case properly proceeds. If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the

6

case.  Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them." (*In re Justice P., supra*, 123 Cal.App.4th at p. 191.)  Here, in light of the traumatic events which had affected Amanda and C.M., their age, and their lack of a relationship with appellant, any notice violation was harmless beyond a reasonable doubt.  (*In re J.H., supra,* 158 Cal.App.4th at pp. 184-185.)

2. *Section 388 petition*

Section 388 permits a parent to petition the court to change, modify, or set aside a previous court order on the grounds of changed circumstances or new evidence.  A court may order a hearing if the parent can demonstrate why "the best interests of the child . . . may be promoted by the proposed change of order.  (§ 388, subd. (c).)  If there is no showing of a change of circumstances or new evidence or that the requested change would promote the bests interests of the child, the court may summarily deny the petition. (*In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 322-323.)  The court may consider the entire factual and procedural history of the case in determining whether that showing has been met.  (*In re Justice P., supra,* 123 Cal.App.4th at pp. 188-189.)

We review a determination to deny a section 388 hearing under the abuse of discretion standard.  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 808.)

"The presumption favoring natural parents by itself does not satisfy the best interests prong of section 388.  The cases that state a child may be better off with his or her biological parent rather than with strangers do so when the biological parent has shown a sustained commitment to the child and parenting responsibilities. " (*In re Justice P., supra,* 123 Cal.App.4th at p. 192.)

"[A] child in the dependency system requires a . . . time-critical response.  Once a child is placed in that system, the father's failure to ascertain the child's existence and develop a parental relationship with that child must necessarily occur at the risk of ultimately losing any 'opportunity to develop that biological connection into a full and enduring relationship.' (*Adoption of Kelsey S*. [(1992)] 1 Cal.4th [816], 838.)" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 452.)

7

In this case, the best interests of Amanda and C.M. would be met by providing them with a stable safe environment so they can heal their emotional wounds and receive constant safe supervision. Appellant had unresolved substance abuse issues and no permanent home. To vacate the proceedings now and to start over would be fraught with peril as the girls are in such fragile emotional states. We find the court did not abuse its discretion in denying the section 388 petition.

*DISPOSITION*

The October 5, 2012 orders of the juvenile court as they relate to appellant P.M. are affirmed.



**WOODS, J.**


**We concur:**



**PERLUSS, P. J.**



**ZELON, J.**